IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| APA EXCELSIOR III L.P., et al., : | |
| : | |
| Plaintiffs, : | |
| : | |
| v. : | CIVIL ACTION NO. |
| : | 1:99-CV-1377-JOF |
| PREMIERE TECHNOLOGIES, INC., : | |
| et al., : | |
| : | |
| Defendants. : | |

**OPINION AND ORDER**

This matter is before the court Defendants' renewed motion for summary judgment [193-1]; Defendants' renewed motion in limine to exclude expert opinion [193-2]; and Plaintiffs' motion to file surreply [203-1].

**I.   Background**

    **A.   Complaint**

Plaintiffs, former shareholders of Xpedite Systems, Inc. ("Xpedite"), filed the instant lawsuit against Defendants, Premiere Technologies, Inc. ("Premiere"), and several of its officers and directors alleging the following causes of action: (1) breach of contract against Premiere, (2) negligent misrepresentation against all Defendants, (3) violations of § 11 of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77k, against all Defendants, (4)

AO 72A
(Rev.8/82)

violations of § 12(a)(2) of the Securities Act, 15 U.S.C. § 77l(a)(2) against all Defendants, and (5) violations of § 15 of the Securities Act, 15 U.S.C. § 77o, against the individual Defendants.

### B. Facts[1]

Plaintiff Funds ("the APA Funds") are managed under Alan Patricof's company, APA. Robert Chefitz, an employee of APA and a limited partner of the general partner of each of the Plaintiff Funds, monitored the APA Funds' investments in Xpedite. Plaintiffs Stuart Epstein and David Epstein are brothers who invested in Xpedite as individual investors. Mr. Chefitz and David Epstein held seats on the Board of Directors of Xpedite. At the time of the merger between Xpedite and Premiere, the APA Funds owned 19.7% of the outstanding shares of Xpedite; Plaintiff David Epstein owned 6.1%; and Plaintiff Stuart Epstein less than 3%.

In early 1997, Xpedite began considering the possibility of merger with another company. In late October 1997, Premiere Technologies, Inc. (n/k/a PTEK Holdings, Inc.) ("Premiere"), expressed an interest in acquiring Xpedite. The parties eventually agreed upon a stock-for-stock transaction that placed a $34.00 per share price on Xpedite's stock. As a condition to the execution of a Merger Agreement between Xpedite and Premiere, Premiere required that Plaintiffs, as well as certain other Xpedite shareholders, execute Stockholder

---

[1] The facts are taken substantially from the court's prior order on Defendants' motion for summary judgment.

Agreements. On November 14, 1997, Premiere announced that it had signed a definitive agreement by which it acquired Xpedite for $34.00 per share in a stock-for-stock merger.

On January 28, 1998, Premiere filed with the Securities & Exchange Commission a Registration Statement for the issuance of Premiere common stock to Xpedite shareholders in connection with the merger of Xpedite and Premiere. The next day Premiere disseminated a Prospectus to Xpedite shareholders as part of the Registration Statement. The Prospectus contained various statements about Xpedite's acquisitions and integration of those acquisitions. The Prospectus also contained information about a product called Orchestrate, intended to be a comprehensive suite of integrated communications services that Premiere publicly launched on June 24, 1997. Xpedite's shareholders approved the acquisition by Premiere in a vote on February 27, 1998.

### C. Procedural History

In an order dated February 28, 2000, the court dismissed Plaintiffs' claims based on corporate mismanagement under the "*Sante Fe* doctrine" which counsels that claims grounded in corporate mismanagement are not cognizable under federal securities laws. *See Sante Fe Industries, Inc. v. Green*, 430 U.S. 462, 477 (1977).[2] The court rejected Defendants'

---

[2]These claims include allegations that (1) Premiere lacked an effective plan for integrating and consolidating Voice-Tel; (2) Premiere significantly reduced staffing at Voice-Tel in an effort to reduce costs, thereby limiting customer service; (3) Premiere attempted to consolidate the billing for various Voice-Tel franchises by reducing the number of billing offices, resulting in a decline in customer service; (4) Premiere's attempt to cut costs at Voice-Tel caused a decline in revenues, margins, and earnings; (5) Premiere's efforts to

defenses based on hindsight, the "bespeaks caution" doctrine, the statutory safe harbor provisions under the PSLRA, and control person liability under § 15, and allowed Plaintiffs' other securities claims to proceed. The court dismissed Plaintiffs' state law breach of contract claims because Plaintiffs were not parties or third-party beneficiaries to the Merger Agreement, nor could Plaintiffs claim standing by reading the Stockholder Agreement in conjunction with the Merger Agreement. The court, however, allowed Plaintiffs' negligent misrepresentation claim to proceed.[3]

In an order dated September 26, 2003, the court granted Defendants' motion for summary judgment. With respect to Plaintiffs' negligent misrepresentation claim, the court found that Plaintiffs could not establish reasonable reliance on Defendants' alleged misrepresentations because Plaintiffs were sophisticated parties represented by sophisticated advisors and had access to information through the due diligence process. *See* Order, dated

---

reduce and eliminate costs at Voice-Tel were ineffective, and Premiere lacked the management information systems to ascertain the full extent of its expenses; (6) Premiere lacked an effective plan for integrating and consolidating VoiceCom; (7) Premiere's plans to cross-sell its products to VoiceCom's Fortune 500 customers was unrealistic; (8) Premiere lacked sufficient internal controls to manage its growth and integrate its acquisitions; (9) Premiere lacked the management capability to implement its strategy for growing and integrating its acquisitions; and (10) Premiere lacked sufficient internal processes for assessing properly the credit risk of its customers.

[3]On February 7, 2001, the court granted Defendants' motion to consolidate this litigation with *In re Premiere Tech., Inc. Sec. Litig.*, Civil Action No. 98-CV-1804-JOF, for the purposes of discovery. On April 18, 2002, the class action parties reached a settlement and the court approved the final settlement agreement on July 8, 2002.

September 26, 2003, at 8-25. The court next considered whether Plaintiffs had standing under § 11. Defendants argued that Plaintiffs did not have standing because they did not acquire their shares in a public offering. The court agreed based upon an analysis of the factors discussed in *SEC v. Ralston Purina Co.*, 346 U.S. 119 (1953), and applied in *Doran v. Petroleum Management Corp.*, 545 F.2d 893 (5th Cir. 1977). Because the court found that Plaintiffs had acquired their shares in a private offering, they did not have standing to raise § 11 claims, and the court granted Defendants' motion for summary judgment as to the securities claims. Plaintiffs subsequently filed an appeal.

On September 23, 2004, the United States Court of Appeals for the Eleventh Circuit affirmed in part and reversed in part this court's order.[4] The Court of Appeals concluded that Plaintiffs had acquired their shares in a public offering, although the court noted that had Plaintiffs been the only offerees, the offering likely would have been private. *See* Slip op., at 9-10 (discussing *SEC v. Ralston Purina Co.*, 346 U.S. 119 (1953)). However, because the "private" sale to Plaintiffs had to be integrated with the public offering that followed,

---

[4]The Court of Appeals affirmed this court's ruling that Plaintiffs could not sustain a state law claim for negligent misrepresentation because they could not have reasonably relied on the assertions of Defendants, as they failed to exercise their due diligence rights. *See* Slip op., at 17-24. Further, at oral argument before the United States Court of Appeals for the Eleventh Circuit, Plaintiffs abandoned their § 12 claims. *Id.* at 2 n.2. Thus, only Plaintiffs' § 11 and § 15 claims are before the court.

5

Plaintiffs' offering was a public offering providing them standing under § 11. *Id.* at 10-11.[5] The Court of Appeals remanded the case to this court.

### D.     Contentions

After remand, Defendants renewed their motion for summary judgment arguing that the opinion of the Court of Appeals provides new law of the case as to when Plaintiffs committed to purchasing their securities. Because the Eleventh Circuit held that Plaintiffs committed to their investment decision prior to the issuance of the Registration Statement, Defendants aver, then Plaintiffs could not have relied on the statements in the Registration Statement and cannot raise a § 11 claim. Alternatively, Defendants argue that even if reliance is not an element of a § 11 claim, Plaintiffs, here, cannot show any loss causation because they cannot tie any damages to the alleged misrepresentations or omissions in the Registration Statement. Defendants also contend that Plaintiffs cannot establish that any misstatements were material.

Plaintiffs respond that any discussion in the Eleventh Circuit's opinion regarding when Plaintiffs acquired their shares is dicta and not binding upon this court. Further, they argue that reliance is not an element of a § 11 claim, and Defendants bear the burden of defeating Plaintiffs' assertion of loss causation. Finally, Plaintiffs argue it is a question of fact for the

---

[5]On appeal, Defendants also contended that Plaintiffs "failed to present evidence creating a triable fact as to whether they received registered shares." *Id.* at 8 n.5. Although the Court of Appeals expressed some doubt about this defense, it instructed this court to consider it on remand. Slip op., at 17. Because Defendants did not raise this argument on their renewed motion for summary judgment, the court does not address it here.

jury to determine whether a reasonable investor in Plaintiffs' position would have considered the statements in the Registration Statement to be material.

## II.     Discussion

### A.     Law of the Case

As the parties, this court, and the Court of Appeals have recognized, this case presents a set of factual circumstances not previously addressed by any court and likely not considered by Congress when drafting the Securities Act. This case involves a small set of extraordinarily sophisticated investors who had access to a wide range of information on Premiere's operations. *See* Slip op., at 10. Despite this access, the investors failed to conduct any kind of due diligence with respect to Premiere, even though risk factors were highlighted in Premiere's public disclosures. *Id.* at 20-23. Trying to fit these investors within the class of individuals intended to be protected by the Securities Act is like trying to fit a round peg into a square hole.

In the first round of summary judgment motions, this court took the approach that Plaintiffs did not have standing to raise their claims because they did not acquire their stock in a public offering – due to the small number of investors, their sophistication, and the manner in which they acquired their stock. The Court of Appeals disagreed because it determined that the private offering made to Plaintiffs had to be integrated with the public offering made to the remaining shareholders. *Id.* at 10-12. But the Court of Appeals, struggling with the same incongruity recognized by this court, has pointed in another direction

– reliance. The Court of Appeals intimated that reliance may not so much be a factor to consider with respect to an individual's standing, but rather that, under these circumstances, it may be more properly considered at the merits stage. *Id.* at 16 n.9.

Again, all parties (and the Court of Appeals) recognized that there is no settled law as to whether reliance impacts a § 11 claim under these circumstances. Both parties cite to cases which purport to support their positions, but no court has been faced with the type of plaintiffs that we have here. As Defendants repeatedly note, Plaintiffs, including individuals who sat on the Board of Xpedite, are typically the types of individuals upon whom obligations to disclose and protect other shareholders, are placed. There is great difficulty in allowing these Plaintiffs to seek protection under the umbrella of § 11.

With these thoughts in mind, the court must consider the breadth of the Court of Appeals' opinion in this case.[6] Plaintiffs, of course, argue that any discussion of reliance is dicta; Defendants contend that the court's repeated statements that Plaintiffs made their investment decision prior to the merger (and issuance of the Registration Statement) are new

---

[6]"Under the law of the case doctrine, both the district court and the court of appeals generally are bound by findings of fact and conclusions of law made by the court of appeals in a prior appeal of the same case." *United States v. Robinson*, 690 F.2d 869, 872 (11th Cir. 1982). The law of the case doctrine does not apply to "assumed" positions. *See Cordoba v. Dillard's, Inc.*, ___ F.3d ___, 2005 WL 1838530, at *10 n.9 (11th Cir. Aug. 5, 2005). Statements of dicta also are not part of law of the case. *See Great Lakes Dredge & Dock Co. v. Tanker Robert Watt Miller*, 957 F.2d 1575, 1578 (11th Cir. 1992). "Dicta are those statements that constitute neither the result of the case nor the portions of the opinion necessary to such result." *Denno v. School Board of Volusia County*, 218 F.3d 1267, 1283 (11th Cir. 2000) (Forrester, J. concurring in part and dissenting in part).

AO 72A
(Rev.8/82)

law of the case by which this court is now bound. This court previously rejected Defendants' "commitment theory" on their motion to dismiss. In doing so, the court found that the Merger Agreement here "provided that the obligations of each party to effect the merger were subject to the prior satisfaction of certain conditions" and could be terminated at any time prior to the effective date. The court, therefore, held that Plaintiffs "did not irrevocably commit themselves to the acquisition of Premier stock by executing the Stockholder Agreements." *See* Order, Feb. 28, 2000. Although this holding was not directly appealed, both Plaintiffs and Defendants repeatedly referred to the circumstances of Plaintiffs' acquisition of shares in their briefing before the Court of Appeals.

A review of the briefs and Court of Appeals' opinion makes this court confident that the Court of Appeals was aware of this disagreement when making its ruling. In its discussion of the facts in this case, the Court of Appeals indicated that on November 13, 1997, Xpedite's board voted to recommend the merger to the shareholders. Slip op., at 3-4. As a condition of the merger, Plaintiffs were required to execute a Stockholder Agreement. *Id.* "Under the Stockholder Agreements, Plaintiffs granted irrevocable proxies to Premiere to vote their Xpedite stock in favor of the merger." *Id*. at 4. "Upon the occurrence of certain conditions, either party could terminate the Merger Agreement." *Id.* at 5. The court, thus, was cognizant of the timing of the merger agreement and the agreements to acquire the shares as it made its rulings.

9

The court then framed the legal issue on appeal as "whether a plaintiff who committed to a purchase prior to the filing of a registration statement has standing to bring suit under § 11 for material misrepresentations or omissions in the subsequently filed registration statement. We hold, albeit with some trepidation . . . that Plaintiffs do have standing to maintain their Section 11 claims." *Id.* at 6. Based upon this reading, it would be difficult for this court to conclude that any statement regarding when Plaintiffs committed to purchase the securities would be mere dicta. Moreover, the Court of Appeals continued to refer to the timing of Plaintiffs' acquisition throughout the rest of the opinion.

After determining that Plaintiffs acquired their shares in a public offering because their offering had to be integrated with the later offering to the "public shareholders," the Court of Appeals turned to the issue of reliance. "Although Defendants generally suggest the time at which Plaintiffs committed to the acquisition of Premiere stock bars their Section 11 claim, Defendants do not make the related, seemingly more attractive argument that, due to the time of their investment decision, Plaintiffs could not possibly have relied on the registration statement and therefore should not be entitled to maintain their claims under Section 11." *Id.* at 12.

The Court of Appeals then set forth what it considered to be the basis for such an argument, a "road map" as it were, by first indicating that reliance is not a concept completely foreign to § 11 cases. The Act does provide that if a plaintiff acquired the securities "after the issuer has made generally available to its security holders an earning statement covering a

10

period of at least twelve months beginning after the effective date of the registration statement," a plaintiff must demonstrate reliance. *See* Slip op., at 12 (citing 15 U.S.C. § 77k(a)). Further, even if a plaintiff acquires the securities prior to such an earnings statement, the statute provides an affirmative defense if the plaintiff "knew of such untruth or omission." *Id.*

The court concludes by stating that "[i]t is conceivable, therefore, that if a plaintiff committed to an acquisition prior to the filing of a registration statement – if reliance were a complete impossibility under any theory – he too should not be permitted to recover under Section 11." *Id.* at 13 (citing favorably to *Guenther v. Cooper Life Sciences, Inc.*, 759 F. Supp. 1437 (N.D. Cal. 1990) (to rule in plaintiffs' favor would "enable investors . . . to bring a section 11 action even though at the time they purchased their shares they could not possibly have relied on misleading registration statements, since none had been filed. Such a result would clearly contravene the purpose of section 11.")). The court also noted that reliance may actually be an element of Plaintiffs' § 11 claim. *See id.* at 16 n.9.

The court then, again, refers to the timing of Plaintiffs' purchases and states, "[i]n a case like the one currently before the Court, ***the purchaser committed to the sale before the alleged misstatements or omissions were made then therefore before such statements or omissions could have affected the price and played any role in the purchase decision.***" *Id.* at 15 (emphasis added). In concluding its discussion of the § 11 claims, the court again

11

states, "[h]ere, the investment decision was made prior to the filing and effective date of the registration statement." *Id.* at 17.

The court does provide caution concerning the application of a "reliance concept." *Id.* at 15. But its greatest concern appears to be the fact that Defendants did not raise the reliance issue themselves. Defendants may not have raised this argument because of this court's prior ruling on the "commitment theory." However, the Court of Appeals' opinion at the very least certainly calls that holding into question. In fact, because the panel opinion is replete with references to the timing of Plaintiffs' acquisition and because the panel devoted so much attention to the manner in which that timing would implicate any reliance element, this court finds that it must accept that Plaintiffs made their investment decision prior to the issuance of the Registration Statement and consider whether that factual finding has any implication for Plaintiffs' § 11 claim.[7]

### B. Reliance as an Element of Section 11

If reliance is an element of a § 11 claim, there is no doubt that Plaintiffs cannot meet it. As the Court of Appeals held with respect to reliance in Plaintiffs' negligent misrepresentation claim, it "is evident Plaintiffs were on notice of many of the problems

---

[7] Plaintiffs correctly note that the Court of Appeals indicated that its consideration of the case was limited to those issues raised by the parties. *Id.* at 6. However, the court understands this as an explanation for why the Court of Appeals did not go ahead and rule directly on the reliance issue, not as any limitation on the facts of the case as considered by the court.

relating to the alleged misrepresentations and failed to conduct adequate due diligence. There is no basis on which a fact finder could conclude Plaintiffs' reliance on the alleged misrepresentation was reasonable." *Id.* at 23.

As the Court of Appeals noted, however, it is not clear that reliance can be read into a § 11 claim. Several courts have held that it is not an element. *See*, *e.g.*, *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1541 (8th Cir. 1996) (reliance not an element of a § 11 claim); *Shaw v. Digital Equipment Corp.*, 82 F.3d 1194, 1222 (1st Cir. 1996) (same); *In Re Donald Trump Securities Litigation*, 7 F.3d 357, 368 n.10 (3d Cir. 1993) (same).

In spite of this, the Court of Appeals suggested that Plaintiffs may not be able to show a § 11 violation where reliance is an "impossibility." *See* Slip op., at 13. Other courts have discussed this notion. In *Guenther*, investors raised a § 11 claim after purchasing shares of Cooper LaserSonics, Inc., in two public offerings. They alleged that misleading reports were filed in a February 19, 1986 amendment to a June 14, 1985 registration statement filed in conjunction with the first offering, and a February 27, 1987 registration statement filed in connection with the second offering. The court ruled that those plaintiffs who had purchased stock after the June 14, 1985 registration statement, but before the allegedly misleading report was filed on February 19, 1986, had no standing to bring a § 11 claim because they could not trace their shares to the defective statement. The court stated it would "clearly contravene the purpose of section 11" to allow plaintiffs "to bring a section 11 action even

13

though at the time they purchased their shares they could not possibly have relied on misleading registration statements." 759 F. Supp. at 1440.

Here, Plaintiffs committed to purchase their shares prior to the issuance of the Registration Statement. The statements in the Registration Statement could not possibly have impacted their decision. Plaintiffs, here, are in no different position than those in *Guenther* or those who took shares with the knowledge of the falsity of the statements. *See* 15 U.S.C. § 77k(a) (precluding liability under § 11 if plaintiff had knowledge of the falsity at the time of purchase); *see also* Slip op., at 13 (noting with respect to § 77k(a) that "the statute prevents recovery even during the initial period covered by the statute if reliance would have been unreasonable"). The common denominator among these situations is that there is no possible way these individuals could have relied upon the Registration Statement. Accordingly, the court finds that because reliance would be a complete impossibility, Plaintiffs' § 11 claim fails.[8]

### C. Damages[9]

---

[8]The provision of an affirmative defense in § 77k(a) also bolsters support for a view that an impossibility of reliance might preclude a § 11 claim. Here, this court and the Eleventh Circuit both found that Plaintiffs had every opportunity to learn of the alleged false and misleading statements but did not make any investigation that could have taken advantage of the benefit of their position as significant shareholders and directors of Xpedite. Thus, they were in the position to know the falsity of any statements made.

[9]The court GRANTS Plaintiffs' motion to file surreply [203-1].

In the alternative, even if reliance is not an element of a § 11 claim, because the Court of Appeals determined that Plaintiffs made their investment decision prior to the issuance of the Registration Statement, the court finds that Plaintiffs cannot show any damages because they cannot establish loss causation.[10] To prove causation in the securities context, the Eleventh Circuit distinguishes between "transaction causation" and "loss causation." *See Robbins v. Koger Properties, Inc.*, 116 F.3d 1441, 1447-48 (11th Cir. 1997) (discussing Rule 10b-5). "Transaction causation, another way of describing reliance, is established when the misrepresentations or omissions cause the plaintiff 'to engage in the transaction in question.' . . . To prove loss causation, a plaintiff must show 'that the untruth was in some reasonably direct, or proximate way, responsible for his loss.' . . . If the investment decision is induced by misstatements or omissions that were material and relied on by the claimant, but are not the proximate reason for his pecuniary loss, recovery under the Rule is not permitted." *Id.* (quotations and citations omitted). Here, as the Court of Appeals found, Plaintiffs had already made their investment decision prior to the issuance of the Registration Statement; thus, Plaintiffs cannot show that "the untruth was in some reasonably direct, or proximate way, responsible for his loss." As such, Plaintiffs cannot establish loss causation.

---

[10] Courts characterize "loss causation" with respect to § 11 claims in different manners. Some hold that loss causation is an affirmative defense to a § 11 claim. *See Bastian v. Petren Resources Corp.*, 892 F.2d 680, 685 (7th Cir. 1990) (Posner, J.). In any event, it is beyond dispute that Plaintiffs must show damages in some form.

Plaintiffs contend that they had "little or no ability to protect themselves from the adverse results of defendants' misconduct, particularly with respect to the adverse facts developed after they executed the Stockholder Agreements." *See* Reply, at 24 n.9. This argument, however, runs directly contrary to the Court of Appeals' discussion of reasonable reliance and due diligence. *See* Slip op., at 20-23. For the foregoing reasons, the court grants Defendants' motion for summary judgment and finds that Plaintiffs' § 11 claim suffers from an impossibility of reliance and inability to establish loss causation.[11]

### III.   Conclusion

The court GRANTS Defendants' renewed motion for summary judgment [193-1]; DENIES AS MOOT Defendants' renewed motion in limine to exclude expert opinion [193-2]; and GRANTS Plaintiffs' motion to file surreply [203-1].

**IT IS SO ORDERED** this 27th day of September 2005.

　　　　　　　　　　　　　　　　　　　　s/ J. Owen Forrester
　　　　　　　　　　　　　　　　　　　　J. OWEN FORRESTER
　　　　　　　　　　　　　　　　　　　　SENIOR UNITED STATES DISTRICT JUDGE

---

[11] The court DENIES AS MOOT Defendants' renewed motion in limine to exclude expert opinion [193-2].

AO 72A (Rev.8/82)